Good afternoon, everyone. Well, Judges Fletcher, Lee, and I welcome you to the Ninth Circuit. Judge Lee is appearing by video. Can you hear us okay, Judge Lee? I can hear you great, thank you. All right. You may approach the lectern and proceed when you're ready. Good afternoon, Your Honors. May it please the Court, Keith Ruttman, on behalf of the plaintiff and appellate, Ronald Martell. I'd like to reserve three minutes of rebuttal time at this time, please. All right. I'll try to help you out, but please keep an eye on the clock as well. Yes, ma'am. Your Honor, in this case, no factual basis was entered in the Superior Court for the misdemeanor 148 guilty plea that Mr. Martell entered. There was no trial testimony. There was no preliminary examination testimony. No police reports were submitted to the Superior Court. Most importantly, the body-worn camera video was not submitted to the Superior Court either. And in furtherance of what is standard practice in that jurisdiction, the factual basis on the change of plea form simply parroted the language of the statute. That is the factual basis on which this Heck v. Humphrey appeal must proceed. In Yunt, as a matter of state law, the Supreme Court held that Penal Code Section 148 does not require a distinct temporal separation between reasonable and unreasonable force. And that is what I believe the video in this case shows here. Mr. Martell was ordered to get on his knees, and he delayed for a period of approximately five seconds, according to the video. If that was a lawful order, which we did not contend, otherwise that could be a violation of Section 148. When he only got down on one knee, that was not in compliance with the command that he was given, which was to get down on both knees. That could be a section... He was supposed to get down on the ground. Was both knees going to be in compliance? That's what the deputies wanted, and they wanted his hands up behind his neck so they could handcuff him. That is standard procedure for the San Diego County Sheriff's Department. I believe all law enforcement officers practice that type of takedown for safety purposes, and we're not confessing otherwise. He got down on his knees. They told him to get down on the ground, and he declined to do that for a period of time. That could have been a 148 violation. When he was flexing his arms while he was being handcuffed, that could have been a 148 violation. And when he stiffened up during efforts to roll him over after what we contend was the excessive force that caused the dislocated shoulder, that could have been a 148 violation as well. The district court's concern was what the district court labeled temporal hair splitting. And it's our position that while in some circumstances where there's a detailed factual basis set forth in the record that the court can look at when deciding whether the heck or applies in this particular case, temporal hair splitting is what was required because of the multiple, five by our count, different types of behaviors by Mr. Martelli. Let me ask you this, counsel, because you've identified a number of acts that could have served as a basis for the 148 conviction. I'm assuming that the acts that you didn't name could serve as a basis for the 1983 excessive force claim, correct? Yes, Your Honor. At what point do you have to choose what your theory is in order to proceed, if not at the motion to dismiss stage? I think at the summary judgment stage we would clearly have to choose a theory to proceed. It's our belief, which we never got a chance to advance in an evidentiary fashion, that the way he was forced down to the ground with his hands cuffed behind him was what caused the dislocated shoulder. But the 148 violation could have occurred on at least four occasions prior to that time, and at least one time before. Right, so the way that you're envisioning this case proceeding is you survive the motion to dismiss stage. The parties proceed to discovery, and then that bar gets litigated again at the motion for summary judgment stage, and at that point you pick a theory? That's an excellent question, Your Honor. I know we'd have to elect a factual theory to survive on summary judgment and base it upon evidence. I think the reality is the evidence in this case is the video itself. I don't know. I understand that. But, you know, in part for nothing other than notice purposes, right, you've got an entire course of events here, and I think Mimos makes clear that just because it's a continuous course of conduct it doesn't mean that you splice. In some cases I think you can't really splice and dice. That would be too thin. But you're saying in this case you can because there are acts that you can clearly identify that would support the conviction. And then other acts of excessive force that could proceed to claim for damages in this particular lawsuit. Yeah. At some point the defense has to get to know what that theory is, and usually the hack bar is litigated at the motion to dismiss stage. So in light of the guidance by Mimos, when do you think it is that you have to elect a theory, and how is that litigated? Well, I think I can elect a theory now based upon what I know without having sworn testimony. And the evidence is that the theory we would be proceeding on is that when he was taken down to the ground and his shoulders impacted the ground, that's when the force would have caused his shoulder to be dislocated. And now I'm thinking of a rule that applies to other cases as well. So I'm trying to get you to share with me your view of what the law dictates. So to the extent you think that you need to pick a theory at the motion to dismiss stage, that wasn't how the complaint was pledged, now we can talk about leave to amend and all of that, and whether you want an opportunity to do that. Or the alternative view is what you started to say, which is at some point at the summary judgment stage. I'm asking for your view of the law and how this plays out. I think at the summary judgment stage, when qualified immunity comes into play and I have to identify on-point cases, I think at that point I would be required to set forth the specific factual circumstance that I'm alleging constitutes the excessive force that is recoverable, because at that point I'd be required under prong two to identify the case law that puts a reasonable officer on notice that that specific conduct is prohibited under clearly established law. Okay. If I may ask a question. So under your theory, the government could have charged your client for multiple 148 violations, you know, one count for not raising his hands, one for not getting down on the ground. Is that correct under your theory? Yes, Your Honor. I see I'm out of time, if I may answer that question. Yes, Your Honor. They could, although Penal Code Section 654 would then come into play at the punishment stage if you were convicted of multiple counts and would stay any punishment on additional charges. In practice, they don't charge them that way. I've never personally seen it charged unless there's multiple victims where multiple individual officers are alleged to have been the victims of the 148 or Penal Code 69, the felony version. In those circumstances, I would see multiple counts, but not under circumstances like this where it's planned as a misdemeanor. If I could ask a follow-up question, a related question. You mentioned the Yount case, and the Yount case talks about isolated factual context that can exist within one continuous course of conduct. In Yount, if someone was resisting arrest and the officer accidentally shoots the person, what are the isolated factual contexts here? Because here it seems like it's all kind of compressed and related to one, really one factual context. Yes, sir, Your Honor. That is correct. This was a continuous transaction. There was no pause in behavior like Yount where there was a chase and then a foot chase and then a dog was deployed. But Yount itself addressed that, and I cite the quotation on page 12 of my brief. I think that Yount itself specifically takes into account where they say that a defendant might resist a lawful arrest, which would be the first four prongs that I identified here, to which the arresting officers might respond with excessive force to subdue him. So I think Yount takes into account a continuous transaction of the nature that I'm presenting here. Unless the Court has any other questions, I'd just like to. I want to make sure. Yours is the only. It's a comeback case. Oh, okay. It's the only case-scheduled argument this afternoon. I want to make sure that my colleagues have plenty of time to ask you questions. I'm here to answer any questions the Court has for as long as it takes, Your Honor. I'm good. You're not out of time, by the way. Thank you. Judge Lee, do you have any additional questions? I'm good. Thank you. I know you wanted to save rebuttal time, so I'll give you your three minutes back. Okay. Thank you, ma'am. Let me just have a moment to clear the podium. Good afternoon, Your Honors. May it please the Court. I'm Steve Inman, and I represent the appellees, the San Diego Sheriff's Deputies that are named in this action. I'd like to begin by addressing Judge Lee's question about the Yelp case. Yelp differs from this case in that with Yelp, it's possible to make a delineation between where the officer's legal conduct stopped and the lawful conduct began. Yelp involved the same events in the series. However, what made it possible to make that delineation is the escalation in force. Suddenly, we went from somebody that was resisting to blowing out a gun and shooting him in an unnecessary escalation. So that, I think, is different. The acts were temporarily and spatially separated because we went to an entirely different type of force, notwithstanding the fact that there was a continuous chain of events going on. So that's the difference. What an appellant is asking the Court to do in this case is to take each of an appellant's actions, his refusal to get on the ground, his flexing his arms, his sniffing as he's trying to roll over, each of those things, and to treat them as a separate factual context. That's exactly what he's asking. Let me ask you this. So we're now in a situation where he's been taken to the ground, and we're being told there were several things that he did after he was taken to the ground. Do you disagree with your opposing counsel? That is to say, he says those are 148 violations. Do you disagree? Well, yes, he was resisting the entire time. No, not that. You didn't answer my question. Oh, sorry. The things that he did that he doesn't name, for example, sniffing, failure to roll over, were those 148 violations? Yes, Your Honor. Okay. But you cannot slice up a 148 claim as this Court held in Sanders. And we know from the Court's decision in Lamos that you don't treat each of the criminal defendant's acts as a separate factual context because in Lamos, right, there were four different acts that were alleged to physical contact with the deputy, the lady placing herself in between the deputy and the suspect, the blocking the deputy's path, the pulling away when the deputy went to grab the suspect. There were four different acts allegedly under 148, but the Court in Lamos, this Court only found two factual contexts. So that's the same here. We only have one factual context, and that is the context. I think you're over-reading my opinion in Lamos. Sorry? I think you are over-reading the consequence of my opinion in Lamos. I dealt with the facts that were there. I did not deal with a fairly short time span where it was more or less continuous activity. I don't think Lamos decides this case. Well, I do think, Your Honor, that likely most, there is fewer factual contexts than acts. And in this case, that one factual context, the only factual context that the facts in the pleading allege is the factual context in which the deputies are attempting to apprehend and restrain the suspect. We only have one factual context there. There's nothing that causes any separation, temporally or spatially, to create a separate factual context than that, at least not within the facts that are alleged in the complaint. And I think what the appellant is doing here is exactly what Judge Lee warned in the Lamos dissent might occur, and that's the temporal hair splitting. I think the Court cautioned against that in the Fletcher case as well. We don't want to engage in temporal hair splitting. But that was the district court's reasoning in Lamos was that there has to be some spatial temporal separation, and the majority rejected that. But the majority did hold in Lamos that there were, not every act was a different factual context. Well, let me ask you, just in Lamos, which I think distinguishes it from this particular case, is that at the motion to dismiss stage, the plaintiff had basically selected the act of excessive force, so there were four things that could have supported a 148 conviction, and the plaintiff basically selected excessive force as to the final act, meaning the other three could have supported a 148, and then the plaintiff gets to proceed to a jury trial on the fourth occasion. But here, the complaint just pled the entire course of conduct, and at some point, they've got to clarify which fact supported the 148 and which one would support the 1983. When does that occur? Well, why shouldn't it occur at the summary judgment stage? Well, in answering that, I think that the facts pled in the complaint are only facts that occurred at the same time that the resistance of arrest was occurring, the 148. However, I think to meet federal pleading standards under the Supreme Court, and if well and probably, the plaintiff has to show plausibility that he could prevail on the merits, and by not selecting what he believes are acts that he didn't plead guilty to, he's not meeting the federal pleading standard requirements. There is an escape hatch to heck that isn't heck in defense. Isn't that your job on down in the answer? How much is it? Why is that being required? Your Honor, I think that what we're seeing, and we're seeing it often now, is these big guilty pleas in court that are done to try and create an escape hatch. No, no, pardon me. These 148 guilty pleas have, in the past, been an instrument of the prosecution and of the police. They're not an instrument of the defense. They like to do the 148s in order to foreclose the 1983 suit later. They didn't really say, hey, I'd love to plead the 148. I'd be astounded if that's the way that transaction worked. Well, Your Honor, the public admits that the plea was crafted in such a way to attempt to circumvent the heck doctrine, and that's what I think the court should put a stop to and will shut the heck escape hatch by requiring a plaintiff in the plea to state the facts that he's accused of that he's not pleading guilty to and not leave this broad, vague plea to make it possible. You know, that's entirely in the hands of the charging prosecutor. Okay, specify what you say is the 148. If the prosecutor wants to specify, go right ahead. That's the prosecutor's job. We're seeing the teeth-ripped-out effect because defendants are seeking past language, past judges, and prosecutors to attempt to preserve these statistics. Who's seeking what? Who proposed the plea? I mean, if the prosecutor made the charge, he responds to the charge. If the prosecutor charges a specific act, well, the prosecutor's perfectly free to do that. Isn't the defendant supposed to rewrite the charge for the prosecutor? I don't get it. But the defense is intentionally leaving vague the factual basis for the plea. Wait a minute. The intentional leaving vague? The prosecutor has left it vague. Prosecutor is perfectly free to specify. Prosecutor does not specify. How come the prosecutor doesn't do that? I think the approach, Your Honor, to take him respectfully, is to allow a criminal defendant to use the heck doctrine as both a sword and a shield. You're saying that this is a device at the pleading stage in the prosecution, and it's a trick by the defendant not to specify. What's happened is we've got a charge by the prosecutor. He pleads. If the prosecutor wants more specificity, well, make it a more specific charge. I understand that Your Honor is wasting the burden on the prosecutor. But let me say that even if we disagree on that, the prosecutor is bringing the charge, for goodness sake. Yes, Your Honor, but what I'd like to say respectfully, Your Honor, is that it doesn't matter in this case because all the acts occurred in one factual context. Well, that's a different question. Sure. And so because they occurred in one factual context in which the acts of resisting arrest were going on simultaneously with the alleged acts of excessive force. The problem, counsel, is that to some extent the way I see your argument, it's really a jury question, right? So I don't see what's wrong with the plaintiff in the continuous course of conduct like this saying, okay, I resisted arrest. The officers used a certain level of force to take me to the ground and handcuff me. Everything after that is excessive. So in other words, the events leading up to taking him down to the ground, handcuffing his hands behind his back, twisting his arm in order to do so, that serves as a basis for the 148 conviction. Everything after that is excessive, and now I'm entitled to go to trial on this 1983 claim to seek damages for that. What's wrong with that? The problem, Your Honor, is that there's no facts alleged in the complaint of excessive force. Well, it's alleged in the whole context. Leading sufficiency is a separate question, which we've talked about. And frankly, to Judge Fletcher's point, if the people, the government, wanted to put a stop to that, they could seek an admission of a factual basis that would preclude the 1983 suit, and they haven't done that in this case. Yes, Your Honor, but there's no facts alleged in the complaint of the officer's conduct that occurred at a different time than the criminal defendant's resistance. And that's why this is barred by HEC. It's all within the same factual context. So even in areas we disagree on, because it comes down to we're only talking about one single factual context in which the resistance was going on at the same time as the alleged excessive force, that's what makes this case barred by the HEC doctrine. All right. Judge Lee, any questions? Yeah, I have one question. I guess the one benefit of the position taken by opposing counsel is that it's an easier rule to administer. That is, if the jury verdict or the plea deal doesn't specify the factual details, then maybe the HEC bar doesn't apply. Whereas, I guess, you know, for your position, we would have to look at whether it falls within the same factual context. So isn't your opposing counsel's position just an easier rule to apply in future cases? Well, but it's not the rule that the court's already established. The rule the court's established is if it occurs within the same factual context, the HEC bar applies. And that's exactly what we have here. So I don't see that. And besides that, the appellant's approach would leave, well, it would lead to absurd results, honestly. Because you could say, say, for example, a criminal defendant threw a series of punches at an officer, and I pled guilty to the first two punches but not to the next two punches. You know, leaving the plea vague like that could allow, and treating each act by the defendant as a separate factual context could lead to results that make no sense. And the approach that the appellant's taking really removes the teeth out of the HEC document. We wouldn't, I mean, there's really no point in having it if we're going to let a couple of defendants get around it in a manner which the appellant's seeking to do. Let me ask you one final question. Why does that issue get sorted out at summary judgment, or the district court at summary judgment? Honestly, in theory, the district court could say, well, a series of four punches, you can't slice it, two punches here serving as a basis for 148, and then two punches serving as the basis for an excessive force claim. Or, in a different factual situation, the district court could say, all right, everything occurring pre-cuffing serves as a basis for 148, and then the force used after isn't justified. Why isn't that just a factual question that the district court sorts out on a case-by-case basis? Because in this case, Your Honor, the plaintiff in the underlying action, the appellant here, has incorporated by reference the video. And so there's really no question of fact that the court can see from the video that this is all within the money. You can ask him to pick his theory if he said that he would before summary judgment. But regardless of the theory he picks, the video demonstrates that this all occurred within the factual context of apprehending the criminal defendant and stopping his resistance. So whatever theory he goes by, the case is still going to be barred because we can see from the video that the resistance was occurring at the same time as the alleged excessive force. So there's no factual question left. There's no need to go to summary judgment. All right. Thank you. Thank you, Your Honor. Thank you, Your Honor. Excuse me. I'd like to pick up with Judge Lee's question. Heck itself provides the answer. Does it necessarily imply the invalidity of the conviction with a verdict in favor of my client on the issue of him being slammed to the ground after he had already complied with all the orders was that excessive force following a series of 148 violations? And our position is straightforward that it would not necessarily imply that because there are multiple bases for the 148 to stand. I think the issue here that I'm hearing from counsel is that this event just didn't go on long enough for a court or a finder of fact to draw the temporal or spatial distinctions that the other cases apply. This was a relatively short and straightforward event, and we did incorporate the video by reference into the complaint, which is appropriate. And I think if I had not done so, then I would have left myself open to being suggested to try and hide the ball, so to speak. But we did not run away from the fact that this particular transaction was relatively straightforward. What's the hiding the ball argument? That we said what happened, and the video would come out later and show something completely different. That's all I meant by that. You just put the video out. There it is. We've all seen it. Yes, exactly. This is what happened, and then I tried to articulate the bases in the complaint itself. I tried to articulate that in Paragraph 8 he was thrown face first down to the ground and his arms wrenched so severely that he suffered the injury that we alleged. So we pointed to it. I didn't specifically cut it out. The other thing I would like to address in the minute that's remained to me is Judge Fletcher's comment. The prosecution absolutely has the opportunity to require as specific a factual basis as they want. They are asked on the record, do you accept the factual basis as stated? And the answer is usually yes. Sometimes it's no, but just as a matter of practice, the prosecutor you can see on the change of plea form that's part of the record, they sign it and review the factual basis before it's even tended to the judge. So if there's an issue with the factual basis, the district attorney's office has every opportunity to say otherwise. And unless there's any further questions, I'd be happy to submit the case. I appreciate the opportunity to speak to the court today. Thank you. Thank you very much to both sides for your argument. Thank you. The matter is submitted, and we're adjourned for today. All rise. Court for this session stands adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: FLETCHER, NGUYEN, LEE